IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMART VENT INC., <br><br> Plaintiff, <br><br> v. <br><br> USA FLOODAIR VENTS, LTD., <br><br> Defendant. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action <br> No. 10-168 (JBS/KMW) <br><br> **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this patent litigation, Plaintiff Smart Vent Inc.
(hereinafter, "Plaintiff") moves for partial reconsideration of
the Court's construction of "door" and "width and height of a
standard concrete masonry unit (CMU)" (see generally Pl.'s Br.
[Docket Item 128]), two of the claim terms construed by the
Court's December 3, 2014 Markman decision.  See Smart Vent Inc.
v. USA Floodair Vents, Ltd., No. 10-168, 2014 WL 6882281, at *1
(D.N.J. Dec. 3, 2014).  For the reasons that follow, Plaintiff's
motion will be granted in part and denied in part.  The Court
finds as follows:

1.   In its Amended Complaint, Plaintiff alleges that
Defendant USA Floodair Vents, Ltd.'s (hereinafter, "Defendant")
distribution and sale of a "TB-1" certified flood vent infringes
one or more claims of Plaintiff's Patent No. 5,944,445, entitled
a "Device and Method for Relieving Flooding from Enclosed Space"

(hereinafter, the "'445 patent" or the "Patent").  (Amended Compl. at ¶¶ 5-29.)  On May 25, 2011, the Court issued its first claim construction decision.  See Smart Vent Inc. v. USA Floodair Vents, Ltd., No. 10-168, 2011 WL 2038738 (D.N.J. May 25, 2011).  Following the parties' request for reexamination, however, the United States Patent and Trademark Office (hereinafter, the "USPTO") issued an Ex Parte Reexamination Certificate (hereinafter, "C1") that substantially revised and/or cancelled the Patent's existing claims and, as relevant here, added claims 12-15.  See Smart Vent Inc., 2014 WL 6882281, at *1.  The parties' dispute concerning the construction of certain terms in the added claims then required the issuance of a second claim construction decision.  See id.

2.   Specifically, following a lengthy claim construction hearing, the Court issued a twenty-nine page decision on December 3, 2014, in which it addressed the parties' positions concerning the construction of "ventilation opening," "screen," "width and height of a standard concrete masonry unit (CMU)," "outer frame," and "door."  Id. at *4-*11.

3.   As relevant here, with respect to the phrase "width and height of a standard concrete masonry unit (CMU)," the Court addressed the parties' conflicting positions concerning whether the phrase expressed the nominal or actual dimensions of a standard concrete masonry unit.  Id. at *6-*7.  Ultimately,

2

however, the Court concluded that a "standard concrete masonry unit (CMU)" refers nominally to a masonry unit 8" by 8" by 16", +/- a 3/8" mortar joint.  Id. at *8-*9.  With respect the term "door," the Court similarly considered the parties' positions concerning whether the "pull tabs" constituted components of the door, rather than merely an attachment.  See id. at *10.  After considering the various arguments, the Court construed "door" to include "pull tabs and a honeycomb-patterned mesh grille," and specifically defined the term as "a movable barrier which can open and close, including pull tabs and a honeycomb-patterned mesh grille backed by screening."  Id. at *10-*11.

4.   Plaintiff now moves for partial reconsideration of the Court's construction of both terms.  (Pl.'s Br. at 4.)  With respect to the Court's dimensional determination of a standard CMU, Plaintiff argues that the construction must have resulted from "a scrivener's error," to the extent the Court construed the term as having three dimensions, rather than two.  (Id. at 14-15.)  As to the Court's construction of "door," Plaintiff challenges the Court's inclusion of "pull tabs" and "a honeycomb-patterned mesh grille" in its construction of "door." (Id. at 9-15.)  Plaintiff specifically argues that, in concluding that the pull tabs acted as a "'necessary component of the door, without which it could not function as intended,'" the Court improperly defined the term to reflect its intended

3

purpose, and incorrectly presumed that the pull tabs serve a purpose relevant to the device's function.  (<u>Id.</u> at 9-11, 13-15.)  As to the "honeycomb-patterned mesh grille," Plaintiff insists that the Court inappropriately combined distinct and/or conflicting embodiments.  (<u>Id.</u> at 11-13.)  Defendant, however, submits that the Court properly evaluated the plain claim language in defining "door," and therefore argues that the Court's prior construction should remain unchanged.  (Def.'s Opp'n at 2-3.)[1]

    5.   Local Civil Rule 7.1(i) provides that a party moving for reconsideration must set forth "concisely the matter or controlling decisions which the party believes" the Court "overlooked" in its prior decision.  L. Civ. R. 7.1(i).  The party seeking reconsideration, however, bears the heavy burden of demonstrating either: "'(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error

---

[1] Defendant's submission in opposition to Plaintiff's motion failed to address Plaintiff's argument concerning the construction of "height and width of a concrete masonry unit," and instead raised new arguments, not addressed by Plaintiff, concerning the Court's construction of a "CMU," "fluid passageway," and "outerframe."  (Def.'s Opp'n at 4-12.)  The Court therefore deemed Defendant's "Responsive" submission "a guised effort to file a belated motion for reconsideration," and advised the parties that Defendant's submission would be disregarded on timeliness and substantive grounds, to the extent it challenged the Court's December 3, 2014 decision as to claim terms other than those raised by Plaintiff.  [Docket Item 132.]

of law or prevent manifest injustice.'"  Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (citations omitted).

6.    A motion for reconsideration, however, constitutes an extremely limited procedural vehicle, and does "not provide the parties with an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor a vehicle "to relitigate old matters, or to raise [new] arguments" that could have been presented in connection with the court's original decision.  NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); see also Tishcio, 16 F. Supp. 2d at 532 (same).  Indeed, mere disagreement with the court's decision should be dealt with through the normal appellate process.  See Andreyko, 993 F. Supp. 2d at 478; see also Shevline v. Phoenix Life Ins., No. 09-6323, 2015 WL 348552, at *1 (D.N.J. Jan. 23, 2015) (same).

7.    The Court first addresses Plaintiff's assertion that the Court made a "scrivener's error" by defining the phrase "width and height of a standard concrete masonry unit (CMU)" to include three dimensions, rather than two.  (Pl.'s Br. at 14-15.)  The Court made no such error.  Rather, given certain inconsistencies in the parties' submissions (see, e.g., Pl.'s Markman Br. at 15 (generally noting that the "overall dimensions" of a concrete masonry unit include the width,

height, and length)), the Court endeavored to harmonize the positions and to further clarify the dimensional limitations, particularly because a standard concrete masonry unit necessarily possesses three dimensions. (See id.) As a result, the Court defined the phrase by width, height, and length, rather than solely width and height—a change far too trivial to affect the scope of the Patent. See Smart Vent Inc., 2014 WL 6882281, at *7-*9. Nevertheless, the Court's inclusion of a length-based limitation extends beyond the Patent's plain language (see '455 Patent C1, Col. 2, ln. 30-Col. 3, ln. 19), and Defendant does not oppose reconsideration in this respect. Plaintiff's motion will therefore be granted in this respect, and the Court will amend its construction of the dimensional limitations of "width and height of a standard CMU" to 8" by 16", +/- a 3/8" mortar joint, rather than 8" by 8" by 16", +/- a 3/8" mortar joint.

8.   The Court next addresses Plaintiff's assertion that the Court's construction of "door" improperly included references to "pull tabs" and a "honeycomb-patterned mesh grille." (Pl.'s Br. at 9-14.)

9.   The Court, however, need not belabor Plaintiff's position concerning the inclusion of pull tabs. (Id. at 9-11, 13-15.)  Indeed, in challenging the Court's construction in this respect, Plaintiff's argument hinges, in essence, upon its

position that the device's "automatic ventilation" system
renders the pull tabs superfluous attachments, thereby
dispelling any suggestion that the pull tabs constitute
components of the door.  (See id.)  Plaintiff, however,
proffered an identical argument in connection with the original
briefing on claim construction (see Pl.'s Responsive Br. at 2),
and the Court expressly rejected it as without merit.  See Smart
Vent Inc., 2014 WL 6882281, at *10-*11.  Plaintiff's renewed
position therefore amounts to little more than an expression of
disagreement with the Court's prior decision, and provides an
insufficient basis for reconsideration.  See, e.g., Ezeiruaku v.
Bull, No. 14-2567, 2014 WL 7177128 (D.N.J. Dec. 16, 2014).

    10.  Nevertheless, the Court again finds that the Patent's
plain language supports the Court's construction.  Critically,
the claims themselves provide ample support for the conclusion
that the pull tabs serve as an actual component of the door.
See Smart Vent Inc., 2014 WL 6882281, at *10.  Indeed, claims
12, 13, and 15 uniformly disclose that the invention bears "a
door pivotally mounted ... for bidirectional rotation between
two open positions and a closed position ... and at least one
[automatic] catching assembly for holding the door in [] closed
position against a minimum level of pressure."  ('445 Patent C1,
Col. 2, ln 34-61, Col. 3, ln. 7-11 (emphases added).)  The
specification and figures then consistently teach that the door

"can, at any time, snap open to enable the passage of flood water into and out of the crawl space." ('445 Patent, Col. 3, ln. 12-16; see also Figures 1 & 6.) The Patent therefore reflects that the "door" will, in response to sufficient pressure, "swing open in the direction of the tidal flow."[2] (See '445 Patent, Col. 3, ln. 34-50.) In other words, the Patent discloses a device primarily intended to automatically vent in response to the force of incoming and receding waters. (See Pl.'s Br. at 14.) Nevertheless, the claim language makes plain that the flood vent can be engaged manually, and discloses that these pull tabs enable such engagement.[3] (See '445 Patent C1, Col. 2, ln 34-61, Col. 3, ln. 7-11.)

11. Given the claim language,[4] the Court rightly considered the specification in order to determine the door's components,

---

[2] Claim 6 consistently discloses that "the catching assembly can maintain" the door in closed position until "minimum pressure is applied to cause the door to swing into one of [the] open positions." ('445 Patent C1, Col. 2, ln. 15-18.)

[3] Indeed, any such limitation would contravene both the claim language and the term's ordinary meaning. See Smart Vent Inc., 2014 WL 6882281, at *11 n.9 (noting that the Merriam-Webster's dictionary defines a door, in relevant part, as a "'a usually swinging or sliding barrier by which an entry is closed and opened'") (citation omitted).

[4] For that reason, the Court again rejects Plaintiff's position that the Court's construction improperly incorporated portions of the specification. (See Pl.'s Br. at 10.) See also Smart Vent Inc., 2014 WL 6882281, at *10. Indeed, recourse to the specification is particularly appropriate in this instance because it resolves the claims' lack of clarity and precision concerning the door's components. See Kruse Tech. P'ship v. Volkswagen AG, 544 F. App'x 943, 957 (Fed. Cir. 2013) (citing

as evidenced, at least in part, by the manners in which the door's bidirectional rotation could occur.[5]  See Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1218 (Fed. Cir. 2014) (noting that, "the specification is the single best guide to the meaning of the claim terms; it is usually dispositive") (citation omitted).  In so considering, the Court noted that the specification described the "'pair of opposing pull tabs,'" in both embodiments, as "'components of the door.'" Smart Vent Inc., 2014 WL 6882281, at *10 (quoting '445 Patent, Col. 4, ln. 28-34, Col. 5, ln. 7-12)).  As a result, the Court concluded that the terms of the Patent necessarily recognized that the "pull tabs" constitute a component of the door, providing at least one means for its bidirectional rotation.  See id.  For these reasons, the Court finds Plaintiff's disagreement with the Court's construction without merit.  Indeed, it would be illogical to have a flood vent that precluded a human user from manually engaging the door in the event of a disaster (even if

---

Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc)).

[5] Though the Court's December 3, 2014 decision stated that the pull tabs "enable" the door's functional features, the Court never intended to suggest that the bidirectional rotation could only occur through use of the pull tabs.  Smart Vent Inc., 2014 WL 6882281, at *10.  Nor should the Court's language be construed to infer some misunderstanding concerning the door's functional features and/or automatic pressure relief system. (See generally Pl.'s Br.)  However, even if it did, the Court reaches the same conclusion upon reconsideration of the term in connection with the pending motion.

not required), and the Patent in this instance therefore
sensibly discloses no such limitation.  As a result, the Court
finds the inclusion of "pull tabs" requires no reconsideration,
and turns to the inclusion of a "honeycomb-patterned mesh
grille."

     12.  With respect to the "honeycomb-patterned mesh grille,"
the Court finds some merit to Plaintiff's argument that the
various embodiments in the written description inherently
conflict.  (See Pl.'s Br. at 11-12.)  Indeed, the preferred
embodiment states that the "door comprises a honeycombed-
patterned mesh grille backed by screening," while in the
alternative embodiment, the "door comprises a grille pattern"
backed by screening.[6]  (Compare '445 Patent Col. 4, ln. 30-31,
with '445 Patent Col. 5, ln. 9-11.) In addition, the visual
depictions consistently reflect the door's varied grille
pattern. (Compare '445 Patent, Fig. 7 (depicting a honeycomb-
patterned grille in the preferred embodiment), with '445 Patent,
Fig. 2 (depicting a different grille pattern in the alternative
embodiment).)  Thus, the Court's prior decision went too far in
construing the term to require a "honeycomb-patterned" grille in
all possible embodiments.  See Smart Vent Inc., 2014 WL 6882281,
at *11.  Nevertheless, the Court does not find reconsideration

---

[6] The Court again finds consideration of the specification
appropriate, given the fact that the plain claim language does
not provide any clear and unambiguous definition of "door."

warranted to the extent suggested by Plaintiff.  (See Pl.'s Br. at 9-14 (generally arguing that the term "door" should exclude any reference to a "grille").)  Rather, given the fact that the written description and visual depictions consistently indicate that a "grille" comprises part of the "door," the Court will refine its construction of "door" to "grille pattern backed by screening," rather than "a honeycomb-patterned mesh grille backed by screening."[7]

13.  For all of these reasons, Plaintiff's motion for partial reconsideration will be granted in part and denied in part.

14.  An accompanying Order will be entered.


__August 20, 2015__                    __s/ Jerome B. Simandle__
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge


_____

[7] The Court rejects Plaintiff's argument that such construction results in any irreconcilable redundancy in claims 1, 5, and 15. Importantly, on reexamination, the USPTO cancelled the portions of claim 5 relied upon by Plaintiff, and such cancelled statements therefore provide no basis to find that the Court's construction created any "incomprehensible" meanings or redundancies.  (Pl.'s Br. at 12-13.)  The Court's revised construction similarly creates no redundancy between the uniform reference to a "ventilation opening" in claims 1 and 15.