IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMART VENT INC., <br><br> Plaintiff, <br><br> v. <br><br> USA FLOODAIR VENTS, LTD., <br><br> Defendant. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action <br> No. 10-168 (JBS/KMW) <br><br> **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this patent infringement and unfair competition action, both Plaintiff Smart Vent Inc. (hereinafter, "Plaintiff") and Defendant USA Floodair Vents, Ltd.'s (hereinafter, "Defendant") move for reconsideration of this Court's June 27, 2016 Opinion and Order granting Plaintiff's summary judgment motion in part and denying it in part on the issue of infringement, and granting in part and denying in part on the issue of unfair competition, while denying Defendant's motion for summary judgment in its entirety. See Smart Vent, Inc. v. USA Floodair Vents, Ltd., 193 F. Supp. 3d 395 (D.N.J. 2016). For the reasons that follow, both Defendant's motion for reconsideration and Plaintiff's motion for clarification/partial reconsideration will be denied. The Court finds as follows:

1. **Factual and Procedural History.** The Court thoroughly described the relevant background of this case leading up to

summary judgment in Smart Vent, Inc., 193 F. Supp. 3d at 395 and need not repeat it here.  As relevant to the pending motions, the Court (1) granted Plaintiff's cross-motion for summary judgment of infringement [Docket Item 153] on the claim term "door"  (2) denied Plaintiff's cross-motion for summary judgment of infringement on the claim term "outer frame," and (3) granted in part Plaintiff's cross-motion for summary judgment on the unfair competition claims, specifically on the issue of whether Defendant falsely or misleadingly advertised its product as compliant with Technical Bulletin 1-08 and on the question of whether Defendant's vents traveled in interstate commerce (prongs one and four).[1]

    2.    **Standard of Review.** Local Civil Rule 7.1(i) provides that a party moving for reconsideration must set forth "concisely the matter or controlling decisions which the party believes" the Court "overlooked" in its prior decision.  L. Civ. R. 7.1(i).  The party seeking reconsideration, however, bears the heavy burden of demonstrating either: "'(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice.'"  Andreyko v.

---

[1] The Court also declined to amend the meaning of the term "recessed," and struck portions of the Opatkiewicz and Bergaglio Declarations because they contained inadmissible hearsay. Smart Vent, Inc., 193 F. Supp. 3d at 413-16.

Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (citations omitted).

3. A motion for reconsideration, however, constitutes an extremely limited procedural vehicle, and does "not provide the parties with an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor a vehicle "to relitigate old matters, or to raise [new] arguments" that could have been presented in connection with the court's original decision. NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); see also Tishcio, 16 F. Supp. 2d at 532 (same). "Unless a court has truly failed to consider pertinent authorities or evidence that could not with reasonable diligence have been presented earlier, a motion to reconsider a decision (even one that may contain an error) is generally futile." CPS MedManagement LLC v. Bergen Regional Medical Center, L.P., 940 F. Supp. 141, 168 (D.N.J. 1996). Indeed, mere disagreement with the court's decision should be dealt with through the normal appellate process. See Andreyko, 993 F. Supp. 2d at 478; see also Shevline v. Phoenix Life Ins., No. 09-6323, 2015 WL 348552, at *1 (D.N.J. Jan. 23, 2015) (same).

4. **Defendant's Grounds for Reconsideration.** Defendant first argues that the Court's granting of partial summary judgment on the first prong of the unfair competition claim,

that Defendant made a false or misleading statement concerning its product, was contrary to the record.  The Court concluded, as a matter of law, that "USA Floodair made at best a misleading and at worst a false statement that the USA Floodair vents comply with TB-1." Smart Vent. Inc., 193 F. Supp. 3d at 424. The Court relied on its earlier determination that TB-1 calls for an individual certification different from that provided by Defendant, in that "TB-1 details the individual certification process only in connection with 'unique or individually designed openings or devices,' not in connection with mass-produced flood vents like those manufactured by USA Floodair." Id. at 403 n. 13.  Defendant takes issue with the Court's finding, as it argues that the Court overlooked or ignored the declaration of Dianne Otto, the former Planning and Zoning Manager for the City of Tybee Island, Georgia. (Def. Br. at 5.)  Defendant believes that Ms. Otto's Declaration, if considered, actually creates a genuine dispute of material fact because she states in her declaration that she was in contact with Sue Hopfensperger, who was conducting an audit of Tybee Island on behalf of FEMA, and that the SAMPLE certificate that Ms. Otto received from Ms. Hopfensperger "is an individual certificate for mass produced vents and that it explicitly references TB-1-08," thereby creating a genuine dispute of material fact regarding the false or misleading statement prong. (Id.)

5. The Court finds that it did not overlook or ignore the Otto Declaration. Affidavits and declarations considered on summary judgment must "set out facts that would be admissible in evidence. . . ." Fed. R. Civ. P. 56(c)(4); see also Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009)("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Most importantly, in the relevant April 18, 2014 email from Ms. Otto to Mr. Opatkiewicz, (Otto Decl. ¶ 9; Ex. E), instead of attaching the actual email or producing a document she received from the "FEMA auditors" she described, Ms. Otto reproduces the statement from their email reading: "See the attached example [SAMPLE certificate]. The technical bulletin requires the engineer's flood opening certification have specific pieces of information. Attached is an example of what needs to be on it, like the detailed calculations." (Ex. E. to Otto Decl.) This out-of-court statement is inadmissible hearsay that does not fall into an exception. First, it is unclear whether the "FEMA auditors" noted in the April 18, 2014 email describes Ms. Hopfensperger, or someone else. In addition, as Plaintiff

5

articulated at oral argument, Ms. Otto's declaration states that Ms. Hopfensperger "doesn't work for FEMA, she works for a company that was retained by FEMA to conduct an audit for FEMA. This is not FEMA." (Tr. 84: 18-20.)  Defendant concedes that Ms. Hopfensperger works for Insurance Services Office, Inc. ("ISO"), "the company that administers the day-to-day work of the [Community Rating System]," which "is an important part of the National Flood Insurance Program which is run by FEMA." (Def. Br. at 3 n.2 and 4 n.3.)  Defendant's attempt to characterize Ms. Hopfensperger as a FEMA representative does not persuade the Court to reconsider its decision, nor does any representation from Ms. Hopfensperger to Ms. Otto who then emailed Mr. Opatkiewicz, an employee of Defendant.  Finally, Defendant does not proffer that Ms. Hopfensperger will be called to testify at trial, rendering her statement non-hearsay.  Defendant has failed to sufficiently articulate why Ms. Otto's declaration was overlooked or that it created a genuine issue of material fact on prong one of the unfair competition claim; therefore, granting reconsideration is inappropriate.

    6.    Defendant cites J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990) for the proposition that hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a

form that "would be admissible at trial." There, the Court held that because "there is no indication that [the out-of-court declarant] would be unavailable to testify at trial," the averments in the affidavit in question "are capable of proof through admissible evidence." Id. Unlike J.F. Feeser though, here, not only is Ms. Otto a "resident of [Kentucky]" so "she couldn't be compelled to come here," but her averments would still not be capable of proof through admissible evidence given the various levels of hearsay in the Declaration as previous discussed. (Tr. 66: 7-8.) Furthermore, as Plaintiff explains, Ms. Hopfensperger's residency "has never been disclosed (or even mentioned) by USA Flood," so there is no indication that she would be able to testify at trial at all. (Pl. Br. at 12 n. 9.) Even if Ms. Otto were to testify at trial, the double-hearsay problem as to what Ms. Hopfensperger said would still preclude considering Hopfensperger's statements. As a result, the Court properly considered Ms. Otto's Declaration, and determined that it along with other evidence submitted by Defendant was insufficient to create a genuine issue of material fact regarding the first element of the unfair competition claim.

    7. Next, Defendant argues that the Court incorrectly disregarded portions of the Bergaglio and Opatkiewicz

7

declarations as inadmissible hearsay.[2] Defendant argues that testimony is "admissible on its own" because Mr. Opatkiewicz can "testify about emails he received and sent," the contents of those emails, and "what he did upon receiving those emails." (Def. Br. at 9.)[3]  Additionally, it argues that "Ms. Bergaglio is competent to testify as to what she heard and what action she took in response to that phone call." (Id. at 8.)  The Court explained that the disputed declaration paragraphs in Mr. Opatkiewicz's declaration are hearsay, given that they disclose "conversations he had with Ms. Otto regarding exchanges she had

---

[2] In its Opinion, the Court found that ¶¶ 9-13, 16 & 18 of the Opatkiewicz Declaration and ¶¶ 4 & 11 of the Bergaglio Declaration must be disregarded because "they recite little more than largely unknown and hearsay exchanges between a non-party and FEMA representatives." Smart Vent Inc., 193 F. Supp. 3d at 415.

[3] Additionally, Defendant argues that the Court's Opinion overlooked paragraph 11 in Mr. Opatkiewicz's Supplemental Declaration which indicates that Exhibits E-K to his original Declaration are Defendant's business records and therefore fall under Rule 803(6), Fed. R. Evid. (Def. Br at 8.)  Plaintiff responds that Mr. Opatkiewicz's "retention of the April 18th email does not transform the underlying unproduced email from the alleged 'FEMA auditors' into an admissible USA Floodair business record." (Pl. Br. at 12-13.)  Of course, "[h]earsay within hearsay is not excluded . . . if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  Not only does Defendant fail to prove specific evidence demonstrating how the emails at issue qualify as business record, but even if this first layer of hearsay (Mr. Opatkiewicz' emails with Ms. Otto and others) would be covered by the business records exception, Defendant has not put forth any reasoning why the second layer of hearsay (e.g., Ms. Otto's exchanges with FEMA auditors and surveyor Dale Yawn) is admissible.

8

with FEMA auditors" and "then express[] his view based upon these third-party conversations that FEMA found USA Floodair's certifications 'acceptable.'" Smart Vent Inc., 193 F. Supp. 3d at 415; see also Blackburn v. United Parcel Serv., 179 F.3d 81, 95 (3d Cir.1999)(hearsay statements not admissible at trial cannot be considered on summary judgment motion).  Regarding Ms. Bergaglio, the Court explained that her statement that she received a phone call from a "building official from the City of Tybee Island, Georgia," who requested on behalf of FEMA, "more information on certifications" USA Floodair had provided for its "flood vents" was unprovable hearsay, Smart Vent Inc., 193 F. Supp. 3d at 415, and that the fact that Dietrich Engineering certified that Defendants' flood events exceeded the specifications for flood events as also inadmissible hearsay.[4]

    8.   The Court finds no reason to reconsider these findings, as Defendant simply repeats arguments previously

---

[4] Defendant also argues that the Court failed to make all reasonable inferences in Defendant's favor as the non-moving party because "TB-1-08 never states that the individual certifications cannot be used for mass produced flood vents," so the Court should not have "reasonably inferred that no such prohibition was intended." (Def. Br. at 9)  The Court simply interpreted the plain language of TB-1, as it is apparent from TB-1 that mass-produced flood events are not covered by the "engineered openings with individual certification." [Ex. C to Opatkiewicz Decl.]  Moreover, a "party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for [reconsideration]." Morris v. Siemens Components, Inc., 938 F. Supp. 277, 278 (D.N.J. 1996).

9

analyzed by the Court from summary judgment motion practice. (See Def. Reply Br. to MSJ at 27-29.) See Tehan v. Disability Mgmt. Servs., Inc., 111 F. Supp. 2d 542, 549 (D.N.J. 2000)("Motions for reconsideration will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered . . ."). The Court properly considered the admissibility of the Opatkiewcz and Bergaglio Declarations, and found that portions of them recite "little more than largely unknown and hearsay exchanges between a non-party and FEMA representatives." Smart Vent Inc., 193 F. Supp. 3d at 416. Nothing has been presented to change that view.

9. Next, Defendant argues that the Court should have granted it partial summary judgment since Plaintiff did not offer any evidence supporting its entitlement to a doctrine of equivalents analysis for the "outer frame" dimensional limitation. (Def. Br. at 11.) But the Court noted that "Smart Vent has not briefed the application of doctrine of equivalents infringement to the claim term 'outer frame,' and argues instead only literal infringement, while USA Floodair likewise focuses its attention only on literal infringement. Thus, the Court does not address the doctrine of equivalents relative to the claim term 'outer frame'". Smart Vent Inc., 193 F. Supp. 3d at 417 n.35. Plaintiff argues that any issues Defendant has with this claim limitation "are more properly addressed in a motion

10

in limine or otherwise in the pre-trial process." (Pl. Br. at 16.) Given that Smart Vent is not pursuing a theory of infringement under the doctrine of equivalents, the Court declines to reconsider its denial of partial summary judgment on the doctrine of equivalents analysis of "outer frame." The Court assumes Smart Vent will confirm it does not rely upon the doctrine of equivalents regarding the "outer frame" dimensional limitation when the Joint Final Pretrial Order is prepared, if not sooner.

    10.  Defendant next argues that the Court erred because it submitted evidence which raised a genuine dispute of material fact with respect to infringement of the "recessed" limitation under the doctrine of equivalents. The Court found that Defendant's flood vents literally infringed the "recessed" door limitation of claim 15, and also concluded that "even if it found no literal infringement because of the protruding nature of the pull tabs (which it does not), the USA Floodair vent would still infringe the "door" limitation under an equivalence analysis, because the pull tabs differ in an unsubstantial way, and otherwise perform substantially the same way to obtain substantially the same result, because both enable manual bidirectional rotation." Smart Vent, 193 F. Supp. 3d at 422 n. 42. Defendant claims that in reaching this conclusion, the Court overlooked the testimony in Ms. Bergaglio's Supplemental

11

Declaration, where she stated "[i]f the door of USA Floodair's flood vents were recessed from the front and back of the outer frame, the pull tabs would have to be much narrower. This would made them much more difficult to grasp, particularly since they are so low to the ground when installed. It would also make it much more difficult to get enough leverage to open the door." (Bergaglio Supp. Decl. ¶ 5.)  Defendant explains that this is "admissible testimony that the differences would not be insubstantial and that recessed pull tabs would not perform in substantially the same way or provide substantially the same result." (Def. Br. at 12.) But Defendant simply repeats arguments from its summary judgment briefing (see Reply Br. at 18-19), something it cannot do in a motion for reconsideration, as previously explained.[5]  The Court appropriately explained its reasoning in footnote 42 of its Opinion, and therefore declines to reconsider its finding on the term "recessed."

---

[5] Defendant also takes issue with the Court's characterization that it "issued [individual] certifications" in footnote 19 of the Opinion, but the Court provided proper context by subsequently quoting directly from Plaintiff's Statement of Material Facts. (Def. Br. at 13; Pl. SMF at ¶ 89.)  The Court will therefore nor delete or correct the verb "issued" in footnote 19 of the Opinion.  Additionally, Defendant argues that the Court misstated the stipulation for "fluid passageway" (Def. Br. at 13).  In order to avoid confusion in the future, the Court will amend the Opinion to state that "fluid passageway" is construed as "the open area between the interior sides of the walls of the frame through which water can flow." [Docket Item 107.]

11. **Plaintiff's Grounds for Clarification/Reconsideration.** Moving to Plaintiff's motion for reconsideration, the Court first addresses Plaintiff's assertion in granting Plaintiff summary judgment on the first and fourth prongs of the unfair competition claim, that the Opinion overlooked that Defendant's mass-produced engineered flood vents cannot be labeled "FEMA-compliant," "NFIP-compliant," or "NFIP-certified." (Pl. Br. at 11.) Specifically, Plaintiff argues that the Court should have discussed FEMA's NFIP Insurance Manual, specifically the "Lowest Floor Guide" certification requirements, because otherwise, industry participants could claim FEMA and NFIP compliance without meeting FEMA's interpretations of its regulations. (Id. at 12-13). As a result, Plaintiff asks the court to enter summary judgment on the first and fourth elements of an unfair competition claim not only as to Defendant's TB-1 misstatements, but as to all of Defendant's allegedly false or misleading statements, including Defendant's FEMA-compliant, NFIP-compliant, and NFIP-certified misstatements.

12. The Court made no such error. Smart Vent already made these arguments in its summary judgment briefing, (See Pl. SMJ Opp'n at 33-34), and the Court properly explained that "because the regulations of the NFIP . . . require nothing more than a certification, the only statements that fairly buttress Smart Vent's unfair competition claims become those directed at

compliance with TB-1." <u>Smart Vent Inc.</u>, 193 F. Supp. 3d at 423. The language regarding certifications in the Lowest Floor Guide is essentially the same as in TB-1, as it requires ICC-Evaluation Reports for companies like Defendant.[6] But even if the Court wanted to parse out the Lowest Floor Guide claim, Plaintiff has not demonstrated entitlement to summary judgment as a matter of law, because it remains unclear whether the Lowest Floor Guide, as part of the NFIP Flood Insurance Manual, carries the force of law.[7] In other words, Plaintiff claims that the Lowest Floor Guide through the Manual constitutes a portion of the NFIP, making Defendant's claims of "FEMA-compliant," "NFIP-compliant," or "NFIP-certified" false or misleading, but it fails to demonstrate that the Lowest Floor Guide constitutes a binding portion of the NFIP itself.[8] Defendant never claimed that it was "Manual Compliant" or "Lowest Floor Guide Compliant," unlike the false and/or misleading "TB-1 Compliant" claim, so the Court will not enter summary judgment regarding

---

[6] The Lowest Floor Guide actually states that "[d]esign requirements and specifications for certification statements are outlined in FEMA Technical Bulletin 1-08." [Docket Item 150.]
[7] The Lowest Floor Guide states that it is "to be used as a guide for identifying the lowest floor for rating buildings being considered for coverage under the National Flood Insurance Program." [Docket Item 150.]
[8] Notably, Plaintiff only attaches the Lowest Floor Guide to its summary judgment briefing [Docket Item 150], as it did not attach the entire Manual. As a result, the Court is unable to determine the legal status of the Manual.

the Manual and Lowest Floor Guide issue.  This material fact dispute remains for trial.

  13. Next, Plaintiff argues that the Court overlooked Defendant's misstatements concerning "Saving Money" on flood insurance through the purchase of its mass-produced engineered flood vents, and that it should enter summary judgment one the first and fourth elements with respect to Defendant's "saving money" on insurance misstatements as well. (Pl. Br. at 13, 15.) Plaintiff argued in its summary judgment briefing (and repeats again in the reconsideration briefing) that meeting FEMA's requirements as reflected in TB-1 and the NFIP Insurance Manual "are the prerequisite to saving money on flood insurance under the NFIP," and since Defendant failed to adhere to those requirements, its advertisement that its vents will allows its customers to "save money" on their flood insurance is misleading and or false. (Pl. SMJ Opp'n at 48-49; Pl. Br. at 14.) Defendant responds that Plaintiff has "never offered any evidence that these statements were false or misleading." (Def. Br. at 3.)  The Court agrees.  In its reply brief in the original summary judgment motion, Defendant attached an email from a Mr. Ernie Plant to Mr. Opatkiewicz explaining that after "purchas[ing] 7 flood vents from [Defendant]," his "flood insurance has been reduced by over 80%!" (Supp. Opatkiewicz Decl. ¶ 14 and Ex. U.)  Given Plaintiff's equivocal evidence of

15

the falsity of Defendant's "saving money" claim, and with Defendant putting forth evidence that a consumer actually saved money, the Court declines to modify its entry of summary judgment to include that claim in favor of Plaintiff. This dispute remains for trial.

14. Finally, Plaintiff argues that the way the Court construed NFIP-Compliance and NFIP-Certification overlooks FEMA's certification requirements set forth in the NFIP Insurance Manual. (Pl. Br. at 15.) Plaintiff makes a conclusory statement that "[b]eing NFIP-compliant or NFIP-certified requires compliance with FEMA's NFIP Insurance Manual and the Lowest Floor Guide provisions contained therein." (Id. at 16.) The Court disagrees, as Plaintiff is simply seeking to relitigate the Court's finding that it "cannot find anything false or misleading in USA Floodair's advertisement of an NFIP-compliant flood vent, simply because its vents fall short of the guidance provided in TB-1, because its certification process otherwise comports with the limited facial requirements of 40 C.F.R. § 60.3(c)(5)." Smart Vent Inc., 193 F. Supp. 3d at 402 n.9. Given that "courts in this District routinely deny motions for reconsideration that simply re-argue the original motion," School Speciality, Inc. v. Ferrentino, No. 14-4507, 2015 WL 4602995, at *3 (D.N.J. July 30, 2015), the Court declines to modify summary judgment entered in Plaintiff's favor with

16

respect to Defendant's "NFIP-Compliant," "NFIP-certified," and "FEMA-Compliant" statements. Again, these aspects of Plaintiff's allegations remain for adjudication at trial.

15. For all of these reasons, Plaintiff's motion for clarification/partial reconsideration will be denied.

16. An accompanying Order will be entered.

 **March 15, 2017**                              **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  Chief U.S. District Judge